IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

Fred Allen Williams, Administrator of the          :
Estate of Jamee'l Williams                         :
1944 Burson Drive                                  :
Chesapeake, Virginia  23323                        :
                                                   :
                                                   :
              Plaintiff,                            :
                                                   :
      v.                                            :
                                                   :
UNITED STATES OF AMERICA                            :        Civil No. 2:14cv59
                                                   :
Serve:  Dana J. Boente, Esquire                     :
        Acting United States Attorney for          :
        Eastern District of Virginia               :
        101 W Main Street, Suite 8000              :
        Norfolk, VA 23510-1671                      :
                                                   :
        and                                         :
                                                   :
Serve:  Eric Holder, Esquire                        :
        Attorney General of the United             :
        States of America                           :
        10th St. & Constitution Ave., N.W.         :
        Washington, D.C. 20530                      :
                                                   :
              Defendant.                            :

FILED

FEB 1 3 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## COMPLAINT

Plaintiff, Fred Allen Williams, Administrator of the Estate of Jamee'l Anita Williams, by

undersigned counsel, hereby files this Complaint against the United States of America and for

this cause of action states:

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671, et

seq.

  2.  Decedent, Jamee'l Anita Williams, was a resident of Chesapeake, Virginia.

  3.  Decedent Jamee'l Anita Williams was the natural daughter of Fred Allen

Williams (hereinafter "Mr. Williams") and Juliette White (hereinafter "Ms. White"). Mr.

Williams is the qualified Administrator of the Estate of Jamee'l Williams, having been appointed

by the Chesapeake Circuit Court on November 29, 2010, Court File No. 100000797. (See

Certificate/Letter of Qualification attached hereto at Tab 1).

  4.  At all times relevant hereto, the lawful beneficiaries of the decedent were Fred

Williams and Juliette White.

  5.  Venue for this action is appropriately in this District pursuant to 28 U.S.C. 1402

as the acts of negligence complained of occurred in this District.  Further, Plaintiff, Fred

Williams, Administrator of the Estate of Jamee'l Williams, lives in this District.  He currently

resides at 1944 Burson Drive, Chesapeake, Chesapeake City, Virginia 23323.

  6.  The medical care rendered to Ms. Jameel Williams by the medical personnel at

the Naval Medical Center Portsmouth (hereinafter "NMCP") was provided by employees of the

Department of the Navy, an agency of the United States of America, acting within the scope of

their employment.

  7.  The negligent acts occurred in Virginia and Virginia law applies in this matter.

  8.  Pursuant to 28 U.S.C. § 2675(a), the allegations (in the form of a claim) set forth

herein were presented to the Department of the Navy on March 27, 2012.  Six months has

expired since the filing of a claim and, accordingly, all administrative remedies have been

exhausted.

## FACTUAL ALLEGATIONS

9.     In 2010, Ms. Williams, 19, was a well known patient to NMCP, having been a patient with a past medical history of systemic lupus erythematosus (SLE).

10.     On or about September 17, 2010, Ms. Williams was involved in an automobile accident in which she struck her left index finger.  She experienced immediate pain and swelling of the finger.  She sustained no other injuries in this accident and she sought no medical treatment immediately following the accident.

11.     On or about September 18, 2010, Ms. Williams presented to the Emergency Room of NMCP for evaluation of ongoing finger pain.  An x-ray study of her finger was ordered, which was read as negative; she was discharged home with pain medication.

12.     On or about September 20, 2010, Ms. Williams received a phone call from a provider at NMCP advising that she had in fact sustained a fracture of the left second metacarpal (left index finger) and that she needed to return to NMCP for a splint.

13.     On or about September 24, 2010 Ms. Williams returned to NMCP where she was given a splint for her fractured finger.  She began wearing it as instructed and was sent home.

14.     On or about September 26, 2010, Ms. Williams noted that her finger had become very red and swollen and it was extremely painful.

15.     On or about October 1, 2010, Ms. Williams presented to her civilian treating rheumatologist, Brinda Dixit, M.D.  Dr. Dixit prescribed prednisone, mycophenolate, methotrexate and prophylactic Bactrim for management of active SLE.

16.     On or about October 3, 2010, Ms. Williams presented to NMCP.  She was diagnosed with a septic left index finger at the PIP joint and was hospitalized at NMCP.

3

17.    The septic finger was incised and drained and Ms. Williams was administered IV vancomycin.

18.    Ms. Williams was also noted to be anemic and a blood transfusion was ordered.

19.     On or about October 5, 2010, Ms. Williams complained of chest pain.  Her oxygen saturation rate was noted to be 91%.

20.    On or about October 7, 2010, Ms. Williams again complained of shortness of breath, her oxygen saturation rates were noted to be in the 70s and low 80s.

21.    Ms. Williams was put on oxygen and her saturation level returned to the 90s.

22.    A chest x-ray and ventilation perfusion scan were ordered.

23.    The chest x-ray demonstrated diffuse interstitial and alveolar opacities.  No pulmonology consultation was ordered.

24.    The ventilation perfusion scan was interpreted as intermediate probability for pulmonary embolism.  Ms. Williams was treated with heparin and Coumadin for suspected pulmonary embolism.  No further testing was ordered to confirm a diagnosis of pulmonary embolism.

25.    On or about October 7, 2010, Ms. Williams experienced spreading edema of the left hand.

26.    On or about October 7, 2010, a nephrology consultation was performed.  Ms. Williams was diagnosed with pre-renal azotemia secondary to decreased oral intake, acute kidney injury multifocal, most likely due to dehydration and nonsteroidal anti-inflammatory drugs, less likely to lupus.

27.    On or about October 8, 2010, Ms. Williams was noted to have significant

sublingual swelling extending down her neck.  She was treated with Decadron and an ENT consultation was ordered.

28.     On or about October 8, 2010, Ms. Williams was examined by Nancy Delaney, M.D., CDR, MC, USNR for a rheumatology consultation.  Dr. Delaney concurred with the use of Decadron and recommended a six month course of Coumadin for anticoagulation.

29.     An x-ray performed on October 8, 2010, demonstrated continued diffuse interstitial and alveolar opacities.  No pulmonology consultation was ordered.

30.     Chest x-ray performed on October 13, 2010 showed interval improvement of left basilar airspace disease.  No pulmonology consultation was ordered.

31.     A chest x-ray performed on or about October 14, 2010, showed bilateral diffuse hazy interstitial opacities with obscuration of the left diaphragm consistent with interstitial edema.

32.     On or about October 17, 2010 a chest x-ray was performed which revealed persistent left sided pleural effusion with basilar linear opacities, most likely representing atelectasis.

33.     On October 18, 2010, at 8:30 a.m. Ms. Williams was documented to have a heart rate of 143, blood pressure of 133/90, oxygen saturation of 94% on 2 liters of oxygen by nasal canula.  She was discharged home later that day.

34.     On or about October 19, 2010, Ms. Williams returned to NMCP with complaints of shortness of breath.  She was admitted and administered broad spectrum antibiotics and Solu-Medrol.

35.     On or about October 19, 2010, Ms. Williams experienced severe respiratory

5

failure and was intubated. She suffered cardiopulmonary arrest and died.

36.     As a direct result of the negligence of health care providers at Naval Medical

Center Portsmouth, Ms. Williams suffered serious injury resulting in her death, extreme physical

and emotional pain and suffering and pecuniary loss.

### COUNT – Wrongful Death

37.     Plaintiff incorporates the substance of the foregoing factual allegations into

this Count as if fully restated and incorporated herein by reference, and further

38.     The medical personnel of the Naval Medical Center Portsmouth were employees,

agents, servants and/or ostensible agents of the United States of America operating within the

scope of their employment when they rendered care and treatment to Ms. Williams.

39.     The medical personnel of the Naval Medical Center Portsmouth had a duty to

provide that degree of care and skill exercised by a reasonable and prudent Health Care Provider

in the same or similar circumstances during their treatment of Ms. Williams.

40.     The treatment rendered to Ms. Williams breached the standard of care and was

negligent, by among others, failing to properly treat Ms. Williams; failing to properly diagnose

Ms. Williams' condition; failing to order appropriate consultations for Ms. Williams; failing to

order appropriate testing for Ms. Williams; failing to properly interpret Ms. Williams' symptoms

and condition; failing to timely and properly diagnose Ms. Williams' condition; continuing to

administer anticoagulation therapy without confirming a diagnosis of pulmonary embolism; by

ordering and administering inappropriate medication in light of Ms. Williams' symptoms; by

improperly and prematurely discharging Ms. Williams on October 18, 2010; failing to take steps

to prevent injury to Ms. Williams; and by otherwise failing to render appropriate care to Ms. Williams.

41.     As a direct result of the negligence of medical personnel at Naval Medical Center Portsmouth, Ms. Williams sustained a serious injury resulting in her death, extreme physical and emotional pain and suffering, and pecuniary loss.

42.     Mr. Williams and Ms. White are the lawful beneficiaries of the decedent.  They have suffered sorrow, mental anguish, and solace, including loss of society, companionship, comfort, guidance, kindly offices and advice as a result of the death of Jamee'l Williams; funeral expenses; and pecuniary loss.

WHEREFORE, Plaintiff, Fred Allen Williams, Sr., Administrator of the Estate of Jamee'l Anita Williams demands judgment against Defendant for all damages allowable under Virginia law up to and including $2,000,000.00 plus costs and interest and such other relief as may be just and proper.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
    PORDY & ECKER, P.A.

By:_____
    Karl J. Protil, Jr. (Federal Bar #12355)
    12505 Park Potomac Avenue
    Sixth Floor
    Potomac, Maryland  20854
    Telephone: (301) 230-5200
    Facsimile: (301) 230-2891

Attorneys for Plaintiff

7